Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3296 | DATE | SEPT. 26, 2001 |
| CASE TITLE | SEAN WILCOX v. NAT'L RAILROAD PASSENGER CORP., etc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendant's motion for summary judgment [7-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | 4 number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | SEP 27 2001 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | | 17 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 9/26/2001 date mailed notice | |
| cw | courtroom deputy's initials | 01 SEP 26 PM 5:40 Date/time received in central Clerk's Office | MQM mailing initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SEAN WILCOX, )
)
        Plaintiff, )
)
v. ) No. 00 C 3296
)
NATIONAL RAILROAD PASSENGER )
CORPORATION, d/b/a Amtrak, )
)
        Defendant. )

DOCKETED
SEP 27 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Sean Wilcox is an employee of defendant National Railroad Passenger Corporation, which provides Amtrak passenger rail service. On August 25, 1999, plaintiff was working as an assistant conductor on Train #48, which departed from Chicago, Illinois at approximately 7:30 p.m. Plaintiff was to work until the train arrived in Cleveland, Ohio during the early morning hours of August 26. However, west of Cleveland, near Elyria, Ohio, plaintiff was repeatedly stabbed by a passenger and suffered severe injuries. Plaintiff brings suit against defendant under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60. Presently pending is defendant's motion for summary judgment.

FELA creates a tort remedy for railroad employees injured on the job. Kossman v. Northeast Illinois Regional Commuter R.R. Corp., 211 F.3d 1031, 1035 (7th Cir. 2000). In light of its broad remedial purpose, FELA is liberally construed in favor of railroad employees. Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994); Lisek v. Norfolk & Western Ry. Co., 30 F.3d 823, 831 (7th Cir. 1994), cert. denied, 513 U.S. 1112 (1995). To establish negligence, a plaintiff must prove the common law elements of duty, breach, foreseeability, and causation. Williams v. National R.R. Passenger Corp., 161 F.3d 1059, 1062 (7th Cir. 1998); Fulk v. Illinois Central R.R. Co., 22 F.3d 120, 124 (7th Cir.), cert. denied, 513 U.S. 870 (1994). However, that burden is significantly lighter than it would be in an ordinary negligence case. A plaintiff need only show that the employer's negligence "played any part, even the slightest in producing the injury". Kossman, 211 F.3d at 1035 (quoting Gottshall, 512 U.S. at 543 (quoting Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506 (1957))). This lightened burden of proof means that a FELA plaintiff can survive a motion for summary judgment provided there is even slight evidence of negligence. Kossman, 211 F.3d at 1035; Williams, 161 F.3d at 1061; Lisek, 30 F.3d at 832.

Under FELA, a railroad employer has a duty to provide its employees with a reasonably safe workplace. Williams, 161 F.3d at 1062. To establish a breach of duty, the employee must show

that the employer failed to act as a reasonable and prudent person would ordinarily act under the circumstances. Tiller v. Atlantic Coast Line R.R. Co., 318 U.S. 54, 67 (1943); LaFreniere v. Indiana Harbor Belt R.R., 2001 WL 881367 *4 (N.D. Ill. Aug. 6, 2001). However, liability is limited to hazards which the employer could have reasonably foreseen. Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 117 (1963); LaFreniere, 2001 WL 881367 at *4. The employee must show that "a reasonable person would foresee [the alleged circumstances] as creating a potential for harm." Kossman, 211 F.3d at 1035 (quoting McGinn v. Burlington Northern R.R. Co., 102 F.3d 295, 300 (7th Cir. 1996)). See also Williams, 161 F.3d at 1062-63. It must be shown that the employer had actual or constructive notice of the dangerous condition. Williams, 161 F.3d at 1063. The criminal nature of an act causing injury bears upon the assessment of foreseeability.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. Schneiker v. Fortis Insurance Co., 200 F.3d 1055, 1057 (7th Cir. 2000); Baron v. City of Highland Park, 195 F.3d 333, 337-38 (7th Cir. 1999). The burden of establishing a lack of any genuine issue of material fact rests on the movant. Wollin v. Gondert, 192 F.3d 616, 621-22 (7th Cir. 1999); Essex v. United Parcel Service, Inc., 111 F.3d 1304, 1308 (7th Cir. 1997).

The nonmovant, however, must make a showing sufficient to establish any essential element for which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Shank v. William R. Hague, Inc., 192 F.3d 675, 681 (7th Cir. 1999); Wintz v. Northrop Corp., 110 F.3d 508, 512 (7th Cir. 1997). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. Celotex, 477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The moving party bears the initial burden of directing the district court to the determinative issues and the available evidence that pertains to each. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); id. at 325 ("the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case"). Then, with respect to issues that the non-moving party will bear the burden of

> proving at trial, the non-moving party must
> come forward with affidavits, depositions,
> answers to interrogatories or admissions and
> designate specific facts which establish that
> there is a genuine issue for trial. Id. at
> 324. The non-moving party cannot rest on the
> pleadings alone, but must designate specific
> facts in affidavits, depositions, answers to
> interrogatories or admissions that establish
> that there is a genuine triable issue. Id.
> The non-moving party "must do more than simply
> show that there is some metaphysical doubt as
> to the material facts." Matsushita Elec.
> Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
> 586 (1986). "The mere existence of a scintilla
> of evidence in support of the [non-moving
> party's] position will be insufficient; there
> must be evidence on which the jury could
> reasonably find for the [non-moving party]."
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
> 252 (1986).

Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of summary judgment are as follows. In spring 1999, plaintiff was hired by defendant to work as an assistant conductor. Plaintiff's duties as an assistant conductor included loading passengers onto the train and collecting tickets from passengers. On the dates at issue, plaintiff was working as the flagger, which meant he went up and down the platform and assisted passengers in boarding the train.

When first hired, plaintiff underwent six weeks of training.[1] There was no training specifically addressing how to

---

[1] Plaintiff cites to his own testimony regarding the training he received. Defendant objects that the testimony is inaccurate and incomplete, but cites to no evidence contradicting

spot a problem passenger or what to do if someone has a weapon. One session was taught by an Amtrak police officer, but he addressed the topic of bomb threats, mostly in a joking manner. As to drunk passengers, the trainees were told to inform the lounge attendants to cut off drinks for that passenger and contact the police if a problem continued. However, no instructions were given as to how to recognize a passenger who was under the influence of drugs or alcohol. As to disorderly passengers, the trainees were told to try to talk to calm the situation. No instructions were given regarding using physical force, self-defense, or approaching problem passengers in a group.

Absent specific threats or information, Amtrak does not screen boarding passengers or their luggage for weapons. Passengers are not permitted to have weapons on their person or in their luggage, but there is no evidence as to this prohibition being communicated to passengers. There is no sign at stations that weapons may not be carried on trains. Amtrak police officers do not regularly travel on trains to provide security.

---

objections are unsupported, the pertinent paragraphs of plaintiff's Rule 56.1 Statement must also be accepted as true. See L.R. 56.1(b)(3); Garrison v. Burke, 165 F.3d 565, 567 (7th Cir. 1999); Valenti v. Qualex, Inc., 970 F.2d 363, 369 (7th Cir. 1992); Ogborn v. United Food & Commercial Workers, Local No. 881, 2000 WL 1409855 *2 (N.D. Ill. Sept. 25, 2000).

Aaron Hall was the passenger that stabbed plaintiff. Hall boarded the train in Toledo, Ohio.[2] Plaintiff took Hall's ticket and did not notice whether Hall was under the influence of drugs or alcohol. Hall followed directions and did not, to plaintiff's untrained eyes, appear to be a threat. Plaintiff did not encounter or notice Hall again until just before the stabbing.

Hall and passenger John Henry Crotty met in the lounge car at 12:30 a.m.[3] Crotty found Hall's behavior somewhat erratic, and asked him if he was on crack or something. Nevertheless, the two conversed and went to Crotty's assigned seat in a coach car where they shared a bottle of vodka that Crotty had. Passenger Joyce Oduno was sitting next to Hall. She observed Hall looking around in a paranoid manner and sensed that things were not right. She moved away from Hall shortly before

---

[2]After the stabbing incident, information was provided to Amtrak that Hall had earlier been removed from a Greyhound bus near Princeton, Illinois because he was unruly and carrying a knife. However, he apparently was permitted to keep the small pocketknife and to board a different bus.

[3]As to Hall's conduct before the stabbing of plaintiff, plaintiff primarily relies upon an Amtrak Crimes Management System Incident Report, which contains summaries of investigators' interviews and other investigative information. Defendant objects that this is inadmissible evidence. However, the summaries of interviews appear to be admissible pursuant to Fed. R. Evid. 803(6). See Wheeler v. Sims, 951 F.2d 796, 805 (7th Cir. 1992); Muzzleman v. National Rail Passenger Corp., 839 F. Supp. 1094, 1098-99 (D. Del. 1993). Also, to a limited extent, it may be admissible as a party admission. See Fed. R. Evid. 801(d)(2)(D).

the stabbing began. Passenger Agnes Lattak also sat near Hall and observed that he was looking around in a strange manner.

Amtrak's Manual of Instructions for Conductors, Assistant Conductors and Trainmen provides that conductors are not to permit consumption of alcohol in a coach car. Conductors also are not to permit persons to board trains who are not in a condition to take care of themselves or whose conduct might endanger their own lives or others. Visibly intoxicated or disorderly persons are not to be permitted to board trains. Hallie Lightfoot was a train attendant on Train #48 on the pertinent dates. She helped board Hall at Toledo and observed that he had a blank look and appeared strange, but that he went in the direction she told him to go. However, he never sat in his assigned seat. Lightfoot later found Hall sitting with Crotty and told Hall he should sit in his assigned seat. Hall responded politely and told her he was finishing a conversation with his friend. Lightfoot had previously observed that Crotty was drunk and boisterous. Train attendant Alvin Carter also observed Hall when he boarded at Toledo. Carter observed that Hall looked "spaced out," with a distant, emptiness in his eyes. Carter directed him to another attendant's car. Later, Hall asked Carter for directions to the lounge car and Carter observed that Hall appeared agitated and disgruntled, and seemed to be on edge with a short fuse.

Crotty apparently fell asleep in his seat. Around the time that the train stopped at Elyria, Hall stabbed Crotty and

left him in the seat. There is no evidence that anyone else observed the stabbing of Crotty and the injuries to Crotty were not discovered until after plaintiff was stabbed. Shortly after the train left Elyria, plaintiff and conductor Michael Dwyer were walking through the train when they encountered Hall outside a bathroom at the end of a coach car. Plaintiff reached into his pocket to get a ticket to hand to Dwyer. However, Hall instead grabbed plaintiff's arm. Plaintiff removed Hall's hand and attempted to walk around Hall. Hall then pulled a knife with a 4-inch serrated blade and stabbed plaintiff in the face and the back of his shoulder. Immediately afterwards, Hall stabbed Dwyer. Local police were called and Hall was taken into custody.

Following a trial held in Cuyahoga County, Ohio, Hall was found guilty by reason of insanity of three counts of felonious assault and three counts of attempted murder. He was sent to a mental facility in Dayton, Ohio for treatment. The investigation revealed that Hall, who had a knife on his person, had been removed from a Greyhound Bus in Princeton, Illinois by Illinois state police because of unruly conduct. There is no evidence that Amtrak knew of Hall's conduct in Princeton, Illinois where he was permitted to travel on another bus to Chicago, Illinois.

Train #48 is part of Amtrak's Intercity Eastern Business Group. In the Eastern Group during the year preceding plaintiff's stabbing, 72 passengers were removed for being unruly, disorderly, violent, or otherwise misbehaving. Five of these incidents involved a passenger possessing a gun and three a

knife. In all of the incidents, the passenger was successfully removed and there were no injuries to other passengers or train employees.

Kevin Lynch has been retained by plaintiff as an expert. He is a railroad police practices consultant and was formerly employed as a police officer, deputy sheriff, and in various positions with the Conrail police, including as a captain. In his report, Lynch details the extent of the Amtrak system and the limited numbers and focus of Amtrak's police force. However, he conclusorily states without adequate explanation that Amtrak police should devote more officers to providing protection on trains themselves including having officers routinely assigned to passenger trains. However, the evidence provided by plaintiff does not establish that violence against passengers or employees was a problem requiring regular police protection. As stated above, in the entire Eastern Group during the year preceding the attack on plaintiff, plaintiff cannot point to even a single incident of an attack on a passenger or employee. Therefore, this conclusion of plaintiff's expert will not be credited because inadequately supported, either by the expert's opinion itself or the evidence in this case. See Vollmert v. Wisconsin Department of Transportation, 197 F.3d 293, 298-99 (7th Cir. 1999).

Lynch also states in his conclusion that Amtrak employees should be trained to deal with mentally unstable persons, trained in self-defense, and trained to use protective safety equipment.

Although conclusorily stated near the end of his report, there is no discussion of these topics elsewhere in the report. Since unsupported, these opinions will not be credited. See Clark v. Takata Corp., 192 F.3d 750, 759 (7th Cir. 1999) ("Where the proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist the trier of fact.").

Plaintiff contends defendant was negligent because it (a) failed to adequately screen boarding passengers; (b) failed to provide police protection on trains; (c) failed to adequately train Amtrak employees in self-defense and in recognizing and dealing with potentially violent passengers; and (d) failed to adequately recognize and react to indications that Hall was dangerous.

Plaintiff contends defendant should have screened passengers to the same extent as airline passengers were screened at the time, that is with metal detectors and X-ray machines, and that Amtrak police should have been regularly accompanying the trains. As previously discussed, the expert's report is insufficient to establish the need for either of these. Moreover, the evidence of 72 unruly passengers being removed from Eastern Group trains during a one-year period is insufficient to establish the need for such measures. None of those passengers caused injury to another passenger or employee and all were successfully removed through the measures in place. It could not

be foreseen that the measures in place were insufficient to reasonably handle the potential for assaults on trains.[4]

As to inadequate training, plaintiff provides no evidence as to what adequate training would be. He does not show that additional training would have prevented the attack that occurred. He does not establish what signs an adequately trained employee would recognize as indicative of a threat and that Hall exhibited such signs. Neither does he establish that self-defense training would have been effective to prevent Hall's sudden attack. Moreover, the evidence of record only supports that Amtrak employees were able to handle all previous incidents of unruly conduct without any resulting injuries. The evidence of record does not support that the training was inadequate, that any inadequacy in training caused the injury to plaintiff, or that it could be foreseen that more training was necessary.

Last, plaintiff contends that employees of defendant had adequate warning that Hall was dangerous, yet did nothing to prevent the attack. First, there is no evidence that, prior to the Amtrak stabbings, any Amtrak employee was aware of Hall having been removed from a bus in Illinois. Also, there is no evidence that, prior to the attack on plaintiff, anyone was aware Crotty had been stabbed. The only question is whether Hall's

---

[4]Moreover, if then-existing airport security measures had been in place for passenger trains in August 1999, it would not have precluded Hall from boarding the train with his knife. It is only after the recent hijacking incidents related to the World Trade Centers that airline passengers have been prohibited from possessing knives with blades of four inches or less.

behavior was strange enough that he should have been recognized as potentially violent and some type of action taken, such as arranging for a police removal at Elyria or earlier. Two passengers and two employees observed that Hall appeared spaced out, blank, or otherwise strange. One employee found him disgruntled at one point.[5] However, Hall followed instructions to a degree and acted politely, even when told he was in the wrong place. During the couple hours Hall was on the train, his behavior was not sufficient to indicate that he was so dangerous that action needed to be taken to remove or subdue him.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [7-1] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 26 2001

---

[5] One employee knew Crotty was drunk and may have been able to conclude he had liquor in an unauthorized location, but there is no evidence that, other than by Crotty, Hall was observed drinking in the coach car.